**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 11, 2022**

# In the Court of Appeals of Georgia

A21A1233. IN THE INTEREST OF K. L., a child.

BROWN, Judge.

This case concerns the custody of K. L., born on August 3, 2009. Joy and John Statham, who have no blood relation to K. L. and are the paternal aunt and uncle of K. L.'s half-siblings, appeal from a juvenile court order concluding that they lack standing to be adjudicated an equitable caregiver under OCGA § 19-7-3.1. They assert that the juvenile court erroneously interpreted and applied the statute governing equitable caregivers in various ways. See OCGA § 19-7-3.1. For the reasons set forth below, we affirm.

We review a juvenile court's decision interpreting a statute de novo. *In the Interest of K. B.*, 347 Ga. App. 694 (820 SE2d 732) (2018). We also "review a juvenile court's application of law to undisputed facts de novo." (Citation and

punctuation omitted.) *In the Interest of A. M.*, 350 Ga. App. 333 (829 SE2d 422) (2019). But, the juvenile court resolves conflicts in the testimony, and its factual findings should not be set aside on appeal unless they are clearly erroneous. See *Holdaway v. Holdaway*, 338 Ga. App. 477, 483 (789 SE2d 817) (2016). "Due deference must be given to the [juvenile] court, acknowledging that it has the opportunity to judge the credibility of the witnesses, and the evidence must be construed in the light most favorable to the [juvenile] court's decision." (Citation and punctuation omitted.) *Skinner v. Miles*, Ga. App. (1) (863 SE2d 578) (2021).

The juvenile court noted in its order that the procedural history of "this case is convoluted, confusing and procedurally inept, in large measure because [the juvenile] court allowed a review hearing for a case over which it had no jurisdiction." Based on our review of the record now before us and the facts stated in previous unpublished opinions of this Court,[1] it is clear that the custody of K. L. has long been entangled with the custody of his sisters and half- siblings, Ky. S., born on August 11, 2007, and Kl. S., born on April 12, 2011, the minor children of K. L.'s mother with

---

[1] *In the Interest of K. S. et al., children*, 346 Ga. App. XXIV (June 27, 2018) (unpublished); *In the Interest of K. S. et al., children*, 324 Ga. App. XXVII (October 11, 2013) (unpublished).

another man, who is a blood relative of John Statham.[2] As we explained in our first

unpublished decision:

> On May 13, 2011, [the three children] were removed from their mother's
> home due to medical neglect, substance abuse by the mother and K. L.'s
> father, the mother's history of mental health issues, and the mother's
> recent incarceration for possession with intent to distribute illegal drugs.
> . . . [O]n July 8, 2011, the juvenile court entered an order wherein it
> found the children to be deprived, placed the children in the temporary
> custody of the Department of Family and Children Services (DFCS), and
> . . . directed DFCS to prepare a permanency plan to reunite the children
> with their parents. . . . In late October 2012, however, the mother
> relapsed, and DFCS placed all three children with the paternal aunt and
> uncle of Ky. S. and Kl. S., [Michael and Marie Zelig], [who] had been
> visiting the children regularly since they were first placed in DFCS
> custody. On November 1, 2012, [Joy and John Statham, who] also had
> been visiting the children, filed a petition for change of custody seeking
> physical custody of Ky. S. and Kl. S., [which they] later amended . . . to
> include K. L.

*In the Interest of K. S. et al., children*, 324 Ga. App. XXVII (October 11, 2013)

(unpublished). The juvenile court awarded permanent custody to the Zeligs, and the

Stathams appealed. This Court vacated the juvenile court's ruling because it lacked

---

[2] The mother also has a daughter, who is approximately four years old and resides with the mother. K. L.'s father died in 2017.

3

jurisdiction to award permanent custody and had not made the findings required for a long-term custody order under OCGA § 15-11-58 and remanded the case "for proceedings not inconsistent with this opinion." (Punctuation omitted.) Id.

On November 4, 2013, the Stathams filed a "Petition for Emergency Order of Detention" seeking temporary custody of the children. Their petition alleged that the children were deprived, that their parents "have indicated that they cannot provide for the children at this time," and that "[t]he State of Georgia has indicated . . . it does not intend to take custody of the children" following the return of the case to juvenile court. On November 7, 2013, the mother and her attorney, K. L.'s father and his attorney, the father of K. L.'s sisters and his attorney, the Stathams and their attorney, Marie Zelig and her attorney, and a guardian ad litem appeared before the juvenile court. The juvenile court issued a "72-Hour Hearing Order" on the same day stating the case was before it based upon the Stathams' complaint that the children were deprived, that the children had been in the home of the Zeligs since December 6, 2012, that the parents of the children "stipulat[ed] to probable cause for deprivation, based, in part, on substance abuse issues," and that the parents consented to temporary custody with the Stathams. The juvenile court then awarded temporary custody to the Stathams pending "an Adjudicatory hearing," scheduled for December

4

4, 2013, and ordered that the Stathams be permitted to pick the children up from the Zeligs' home.

On December 4, 2013, the mother signed a "Consent Agreement" for the "custody, visitation, and general welfare" of the children that was filed with the juvenile court on the same day. The agreement was captioned with the case style and case numbers assigned to the emergency petition filed by the Stathams. The agreement contemplated that it would be approved by a court of competent jurisdiction into a final order and gave temporary custody of K. L. and his half-sisters to the Stathams "until age 18 with the knowledge that any of the parents may petition the court to have custody returned at any time prior to age 18." It specified that "[i]t shall at all times be the objective of [the Stathams] to include the parents in decisions affecting their children in such a manner as to promote the welfare, happiness and well-being of [each] child." The Stathams were obligated to "notify the parents of all medical and dental appointments [and] school activities," and the parents acknowledged that they could not seek a return of custody until they completed a substance abuse assessment. Finally, the agreement mandated "a judicial review of the terms and conditions of [the] agreement at six months."

While the juvenile court never adopted or incorporated the agreement into an order, it nonetheless held a hearing on June 11, 2014, and issued a "Dependency Review" order on June 30, 2014, finding that the children "continue to be dependent children," that the Stathams "shall maintain legal/physical custody of the children," and custody of the children could not be returned to the parents without the prior consent of the court. On March 19, 2015, the juvenile court issued another order stating the "current consent agreement shall stay in effect" and imposed various requirements upon the mother with regard to employment and completion of probation.

In August 2015, the Stathams sought permanent custody of the three children in superior court. After the case was transferred to juvenile court, the juvenile court denied the Stathams' petition. *In the Interest of K. S., et al.*, *children*, 346 Ga. App. XXIV (June 27, 2018) (unpublished). On appeal, this Court vacated the order and directed the juvenile court to consider the issue of custody under OCGA § 19-7-1 (b.1) (third party custody procedures and standards). Id. at *5. On November 30, 2018, the juvenile court awarded sole physical and legal custody of K. L.'s half-sisters to the Stathams and granted visitation rights to the mother. The juvenile court expressly noted that OCGA § 19-7-1 (b.1) does not provide a means for a non-related

6

third party to gain custody of a child. Accordingly, it concluded that K. L. was still subject to what it characterized as an "open deprivation action," i.e., the one in which the consent order was filed on the day of the adjudication hearing. The order further stated that K. L. had "continuously" been in the juvenile system and subject to the deprivation action since 2013.

On June 1, 2020, the mother petitioned the juvenile court to return K. L. to her custody. Following a June 19, 2020 hearing, the juvenile court continued the mother's request for a return to custody and ordered increased supervised and unsupervised visits for the mother.

On June 23, 2020, the Stathams filed a petition seeking permanent custody of K. L. in superior court, relying upon OCGA § 19-7-3.1, the equitable caregivers statute, effective July 1, 2019. Their petition alleged that K. L. had been in the juvenile court system as a dependent child since 2011. The mother answered the petition, requested that the superior court dismiss it for lack of standing, and asserted a counterclaim for modification of custody and visitation. The superior court transferred the Stathams' case to juvenile court, where it was consolidated with the mother's case seeking a return of custody.

Following an October 2020 hearing at which several witnesses testified, the juvenile court issued an order in which it concluded by clear and convincing evidence that the Stathams lacked standing to seek custody under OCGA § 19-7-3.1 as equitable caregivers. It also concluded that based upon the lack of a petition for dependency or an order finding K. L. dependent in the 2013 action that resulted in the consent agreement, the juvenile court action should have been dismissed without prejudice. It then found that the mother has custody of K. L. and that it was impossible for it "to give custody back to the mother in that the court cannot give what it does not have." The Stathams appeal from the portion of the order concluding that they were not equitable caregivers.[3] Neither party asserts error in connection with the juvenile court's conclusion that the mother has custody of the children as a result of the procedural deficiencies in the deprivation action initiated by the Stathams in 2013.

Before addressing the Stathams' specific claims of error on appeal, we outline the general framework of the equitable caregivers statute. "Under OCGA § 19-7-3.1,

---

[3] The Georgia Department of Human Services filed a "Notice of Non-Participation" in this appeal, contending that it was never involved in the private agreement between the mother and the Stathams and that it was never involved in the action initiated by the Stathams.

which became effective July 1, 2019, courts are permitted to adjudicate an individual to be an equitable caregiver." (Citation and punctuation omitted.) *Skinner*, Ga. App. at (1). A trial court may adjudicate a person as an equitable caregiver by finding clear and convincing evidence that the person has:

> (1) Fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life;
> (2) Engaged in consistent caretaking of the child;
> (3) Established a bonded and dependent relationship with the child, which relationship was fostered or supported by a parent of the child, and such individual and the parent have understood, acknowledged, or accepted that or behaved as though such individual is a parent of the child;
> (4) Accepted full and permanent responsibilities as a parent of the child without expectation of financial compensation; and
> (5) Demonstrated that the child will suffer physical harm or long-term emotional harm and that continuing the relationship between such individual and the child is in the best interest of the child.

OCGA § 19-7-3.1 (d). The statute also mandates four factors to be considered by the trial court "[i]n determining the existence of harm." OCGA § 19-7-3.1 (e). After a trial court adjudicates a person an equitable caregiver, it "may enter an order as appropriate to establish parental rights and responsibilities for such individual, including, but not limited to, custody or visitation." OCGA § 19-7-3.1 (g).

9

1. The Stathams assert that the juvenile court erred by failing to conclude that they had established the requirement of OCGA § 19-7-3.1 (d) (3). In their view, the 2013 consent agreement met their burden despite the mother's later change of heart. We disagree.

OCGA § 19-7-3.1 (d) (3) required the juvenile court to find, by clear and convincing evidence, that the Stathams "[e]stablished a bonded and dependent relationship with the child, which relationship was fostered or supported by a parent of the child, and such individual and the parent have understood, acknowledged, or accepted that or behaved as though such individual is a parent of the chil[d]." While the Stathams presented evidence at the hearing with regard to their "bonded and dependent relationship with [K. L.]," their proof that they and the mother "have understood, acknowledged, or accepted that or behaved as though such individual is the parent of [K. L.]" is lacking. Id. The consent agreement refers to the mother and father as the parents and the Stathams as "petitioners" throughout and sets forth conditions for the return of custody to the parents. And while the agreement allowed for custody to remain with the Stathams until K. L. reached the age of 18, it was clearly an agreement for *temporary* custody. The mother testified that she understood

the agreement to be a temporary arrangement so that the children could be returned to her.

In the hearing, Joy Statham testified that she has done nothing to "sour [the mother] in the mind of [K. L.]," explaining, "I always tell the children, all of them . . . we want to respect your mother, we want to honor your mother. On Mother's Day we get gifts for her, and birthdays." She also acknowledged:

> [K. L.] knows we're not biologically his mom and dad. When we first had custody of them, . . . we would say, it's aunt and uncle. [The mother] has told them every single time and when she would have visits . . . she would tell them . . . that's not your mom and dad. So, . . . she's actually . . . kind of pushed that it's not your mom and dad, so they know, but they have chosen to still say it.

She acknowledged that when she and her husband told K. L. that his father had died, the mother was "quite upset" that she had not been the person to give him the news.

After reviewing the consent agreement relied upon by the Stathams to make the showing required by OCGA § 19-7-3.1 (d) (3), as well as all of the other evidence presented in the hearing relevant to this issue, we cannot say that the juvenile court clearly erred by declining to find that the Stathams had standing to seek custody as equitable caregivers under OCGA § 19-7-3.1, and we therefore affirm. Compare

11

*Skinner*, Ga. App. at (1) (c) (affirming trial court's order naming woman's former partner equitable caregiver status where women lived and raised the children together before their relationship ended in 2015).

2. In light of our holding in Division 1, the Stathams' remaining enumerations of error are moot and need not be addressed.

*Judgment affirmed. Doyle, P. J., and Reese, J., concur*.